F I L E D
CLERK OF COURT

2024 NOV 25 PM 2: 44

SUPERIOR COURT
OF GUAM

# IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM, )  CRIMINAL CASE NO. **CF0334-23-01**
                                           )  GPD REPORT NO. 23-10760
                                           ).
               vs.                        )
                                           )  DECISION AND ORDER
                                           )  RE. THE OAG'S MOTION TO
**THERESA MARIE AFLLEJE BLAS,**      )  DISQUALIFY DEFENSE COUNSEL
DOB: 07/08/1971                     )
                                           )
                          Defendant.    )
_____ )

## INTRODUCTION

This matter is before the Honorable Maria T. Cenzon upon the Office of the Attorney General's ("OAG") Motion to Disqualify Defense Counsel (the "Motion") filed on July 5, 2024. Representing Defendant Theresa Marie Aflleje Blas ("Defendant") is Attorney Thomas J. Fisher (hereinafter "Attorney Fisher" or "Fisher"). Assistant Attorney General JoAnna P. Deering filed the Motion on behalf of the OAG. The Court took the Motion under advisement without oral argument pursuant to Supreme Court of Guam Administrative Rule 06-001 and CVR 7.1(e)(6)(E) of the Local Rules of the Superior Court of Guam.

After reviewing the OAG's Motion, the Defendant's Opposition, and the applicable statutes and caselaw, the Court now issues the following Decision and Order **DENYING** the Motion to Disqualify Defense Counsel.

//

//

## PROCEDURAL AND FACTUAL BACKGROUND

On May 19, 2023, a grand jury indicted Defendant of the following charges: Promoting Major Prison Contraband (As a Second Degree Felony) and Promoting of Prison Contraband (As a Misdemeanor). Indictment (May 19, 2023). Before Defendant's arraignment on September 6, 2023, several motions for withdrawal of representation were lodged until Attorney Fisher's appointment on August 25, 2023. *See* Order Granting Motion to Withdraw as Appointed Counsel (Aug. 25, 2023); *see also* Ntc. of Court Appointed Counsel (Aug. 25, 2023). At her arraignment, the Defendant appeared with Attorney Fisher before the Honorable Benjamin S. Sison and asserted her speedy trial rights under 8 GCA § 80.60 and continues to assert her speedy trial rights.[1]

On November 3, 2023, the Defendant filed a Motion to Disqualify a Prosecutor, and the OAG timely opposed the motion on November 17, 2023. On April 3, 2024, the Court issued its Decision and Order granting Defendant's Motion to Disqualify a Prosecutor. The OAG filed subsequent Motions for Leave of Court to file a Motion to Disqualify Defense Counsel on April 5, 2024, and to file a Motion for Reconsideration on April 8, 2024. The Defendant timely filed

---

[1] During the first Pre-Trial Conference in this asserted case on October 17, 2023, defense counsel raised an oral objection to Mr. McDonald serving as a Special Assistant Attorney General, but agreed that Defendant's speedy trial clock was tolled during the pendency of Defendant's Motion. *Pre-Trial Conference – Asserted* at 11:16:52 AM to 11:21:07 AM. The Court issued its Decision and Order Re. Def's Mot. to Disqualify a Prosecutor on April 3, 2024, and on the same day issued its Amended Criminal Trial Scheduling Order [Asserted] scheduling trial for April 17, 2024. On April 9, 2024, during the second pre-trial conference in this asserted matter, the Court addressed the OAG's filing of its Motion for Leave of Court Allowing Plaintiff to File Motion to Disqualify Defense Counsel on April 5, 2024. During that hearing, the Court found that the filing of the OAG's Motion to Disqualify Defense Counsel was based upon an alleged conflict of interest that purportedly prevented Defense Counsel from serving as Defendant's court-appointed attorney. The Court found that because Defendant is entitled under the Constitution of the United States and the laws of Guam to conflict-free counsel, that the Court had a duty to address the Motion and found that the pendency of the OAG's Motions again tolled the speedy trial clock; the defense counsel agreed. *Pre-Trial Conference -Asserted* on April 9, 2024, at 11:30:25 AM to 11:31:12 AM (Apr. 9, 2024).

her Oppositions to the Motion for Leave of Court to file a Motion for Reconsideration on April 16, 2024, and to the Motion to Disqualify Defense Counsel on May 3, 2024.[2]

The Court granted the Motions for Leave of Court on June 19, 2024, and ordered a briefing schedule for the parties to submit their motions. *See* Decision and Order Granting Motion for Leave of Court (Jun. 19, 2024). The OAG contemporaneously filed their Motion for Reconsideration to Disqualify a Prosecutor and Motion to Disqualify Defense Counsel on July 5, 2024. The Defendant filed an Opposition to the Motion on July 19, 2024.

## LAW

### A. *Barrett-Anderson v. Camacho* Establishes The Proper Test for Attorney Disqualification Under The Guam Rules of Professional Conduct

The Court reiterates the proper test for attorney disqualification in this jurisdiction as set forth in its April 2, 2024 Decision and Order Re. Defendant's Motion to Disqualify a Prosecutor. The Guam Supreme Court has declared that "[t]he proper test for attorney disqualification in Guam is whether an attorney's continued representation or participation in a matter violates or significantly risks violating the Guam Rules of Professional Conduct." *Barrett-Anderson v. Camacho*, 2018 Guam 20.

Prior to *Barrett-Anderson* and the adoption of the 2003 Guam Rules of Professional Conduct, the standard in attorney disqualification was the "appearance of impropriety" measure articulated in *People v. Tennessen*, 2009 Guam 3. There, the Supreme Court disqualified the entire Attorney General's office in a criminal prosecution "when a personally-conflicted Attorney General breached a previously-imposed conflict wall." *Barrett-Anderson* at ¶ 16. Since *Tennessen*, Guam adopted the 2003 Guam Rules of Professional Conduct, thereby eliminating the

---

[2] The Court incorporates the Procedural and Factual Background as set forth in its Decision and Order Re. the OAG's Motion for Reconsideration of Decision and Order Disqualifying a Prosecutor filed concurrently herewith.

"appearance of impropriety" standard in favor of establishing one requiring a showing of a violation of or significant risk of violating the Rules of Professional Conduct before disqualifying the attorney.[3] It is, however, noteworthy that despite overruling *Tennessen*, the Gaum Supreme Court declared that its decision therein is not inconsistent with *Barrett-Anderson* "as it is a disqualification case concerning personal conflicts in *criminal* cases." *Id.* (emphasis added).

**B.      Rule 1.7 of the Guam Rules of Professional Conduct requires the OAG to show that Attorney Fisher's appointment results in a "significant" risk" of violating the Rules of Professional Conduct.**

Rule 1.7 of the Guam Rule of Professional Conduct (GRP) provides, as follows:

**Rule 1.7: Conflict of Interest: Current Clients.**

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
    (1) the representation of one client will be directly adverse to another client; or
    (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
    (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
    (2) the representation is not prohibited by law;
    (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
    (4) each affected client gives informed consent, confirmed in writing.

The Court is not aware of any subsequent Guam Supreme Court case addressing attorney disqualification under Rule 1.7 since *Barrett-Anderson, See Dec. and Order* (Apr. 2, 2024) at p.

---

[3] Barrett-Anderson at1118 ("[W]e find that the "appearance of impropriety" standard ceased to be the standard for attorney disqualification after the 2003 adoption of the Guam Rules of Professional Conduct for criminal actions filed after the rules' effective date and for all subsequent attorney conduct in pending civil cases).

7, nor have the parties cited to any Guam authority following *Barrett-Anderson* in the context of a criminal case. Consequently, the Court's analysis begins with *Barrett-Anderson.See Dec. and Order* (Apr. 2, 2024) at p. 7.

*Barrett-Anderson* requires a showing of more than "an appearance of impropriety" to justify the disqualification of an attorney. However, the Guam Supreme Court did not wholly reject a Court's consideration of the "appearance of impropriety" in considering attorney disqualification, but merely requires that before finding disqualification is warranted, the appearance of impropriety must be coupled with an additional showing "that the attorney's representation risks violating the Rules of Professional Conduct." *Barrett-Anderson* at ¶ 17. (quoting *Bergeron v. Mackler*, 623 A.2d 489, 493 (Conn. 1993) ("Although *considering* the appearance of impropriety may be part of the inherent power of the court to regulate the conduct of attorneys, it will not stand alone to disqualify an attorney in the absence of any indication that the attorney's representation risks violating the Rules of Professional Conduct.") (emphasis added)).

Moreover, in determining whether "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer" under Rule 1.7, the "significant risk" does not allow for disqualification for a potential conflict, but for "inevitable and material conflicts." *Id.* (citing *Bottoms v. Stapleton*, 706 N.W.2d 411, 417 (Iowa 2005)). In considering the appropriate formula, the Court considers the analysis by the Iowa Supreme Court in *Bottoms*, which reasoning was adopted by the Guam Supreme Court in *Barrett-Anderson*.

Although Bottoms, like *Barrett-Anderson*, does not involve a criminal proceeding, the principles are articulated clearly therein and Iowa Rule of Professional Conduct 32:1.7 mirrors

Guam's Rule 1.7 in all applicable respects.[4] Consequently, the Court finds its analysis in determining whether there exists a disqualifying conflict both persuasive and appropriate. The Iowa Supreme Court reasoned as follows:

> The question to be answered under rule 32:1.7(a)(2) is whether there is "a significant risk" that counsel's representation of one client "will be materially limited by [his or her] responsibilities to another client." See *id. r.* 32:1.7(a)(2). Although related to the old "appearance of impropriety" test, the modem approach focuses on the degree of risk that a lawyer will be unable to fulfill his or her duties to both clients. *See generally* 1 *The Law of Lawyering* § 10.4, at § 10-12 to 10-13 (noting the old standard was "too vague and subjective" and was dropped from the ABA Model Rules of Professional Conduct).
>
> A comment to rule 32:1.7 sheds light on when a conflict of interest will materially limit an attorney in the performance of the attorney's responsibilities:
>
> > [A] conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend, or cony out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities.... The mere possibility of subsequent harm does not itself require disclosure and consent. *The critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.*

*Bottoms* at 416 (quoting Iowa R. of Prof'l Conduct 32:1.7 cmt. [8]) (emphasis added).

---

[4] Iowa R. of Prowl Conduct 32:1.7 mirrors Rule 1.7 of the Guam Rules of Professional Responsibility in all relevant aspects, and provides:
(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.
(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing.
(c) In no event shall a lawyer represent both parties in dissolution of marriage proceedings.

In *Barrett-Anderson*, the Guam Supreme Court noted Bottoms as finding that the "concept of a potential conflict of interest is foreign to the new ethical rule." The entire portion of the Iowa's court's discussion about potential conflict is important to consider, so it is replicated here:

> In considering this ruling [of the district court that "there is a significant potential for divergence of" the interests of the attorney's clients], we first note that the concept of a potential conflict of interest is foreign to the new ethical rule. That is because rule 32:1.7(a)(2) states that a conflict of interest "*exists* if there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client." Iowa R. of Prof'l Conduct 32:1.7(a)(2) (emphasis added). In other words, if there is a significant risk that representation of one client will materially limit the representation of another client, *a conflict of interest **actually exists**; **it is not merely potential**. See* 1 *The Law of Lawyering* § 10.4, at 10-13. Thus, only an actual conflict of interest, as defined in rule 32:1.7(a), will justify disqualification.

*Bottoms* at 411. The Court interprets this finding in *Bottoms* as standing for the proposition that the existence of a significant risk that the representation of one client will materially limit the representation of another client is in and of itself an actual − not potential − conflict of interest which requires disqualification.

## DISCUSSION

The OAG contends that Attorney Fisher's role as a member of the Guam Legislature is a conflict of interest prohibiting his representation of the Defendant as defense counsel and argue that Fisher's role as a sitting senator, including serving as a member of the Committee on Public Safety which votes to appropriate funds for law enforcement, the Office of the Attorney General, and the Department of Corrections, gives rise to the conflict necessitating his disqualification in this case. *See Ppl.'s Mot.* at pp. 3-4. In support, the OAG cites to the case of *Georgia Dept. of Human Svcs. v. Sistrunk,* 291 S.E.2d 524, 528-529 (Ga. 1982) for the proposition that Attorney Fisher cannot serve both as a servant of the People of Guam as a sitting senator, and as defense attorney who purportedly "litigat[es] against the people's interest." Mot. at p. 6.

**A.    The OAG's reliance on *Georgia Department of Human Resources v. Sistrunk* is improper as it was subsequently abrogated.**

In *Georgia Department of Human Resources, supra,* the Supreme Court of Georgia held a legislator is prohibited "from representing a client, for his own financial gain, in any civil transaction or matter wherein the State of Georgia shall be an opposing party." *Ga. Dept. of Human Resources,* 249 Ga. 543, 547 S.E.2d 524 (1982). The Georgia court reasoned:

> 'Either he must violate the duty which he owes to his principal, or exercise a virtue rare amongst men – that is, sacrifice his own interest to that of another. To avoid this collision of interest, and to prevent a temptation to infidelity in his trust, the law imposes upon him a positive prohibition.'

*Id.* (quoting *Harrison v. McHenry,* 9 Ga. 164 (1850)).

However, the Court finds that the OAG's reliance on *Georgia Department of Human Resources* is misplaced, particularly because the holding therein has since been abrogated by *Georgia Ports Authority v. Harris,* 146 S.E.2d 95.[6] In *Georgia Ports Authority,* the Georgia Supreme Court recognized the overarching issues in rending a "blanket rule of disqualification" in the earlier case of *Georgia Department of Human Resources* while also recognizing that the prior decision placed Georgia in the minority among states. *Ga. Ports Auth.* at 146.[7] The Court finds worthy to repeat here what the Georgia Supreme Court repeated from the Georgia Legislature:

> [It is] also essential to the proper operation of government that those best qualified be encouraged to serve the government. Accordingly, legal safeguards against conflicts of interest must be so designed as not unnecessarily or unreasonably to impede the recruitment and retention by the government of those men and women who are best qualified to serve it. An essential principle underlying the staffing of our government structure is that its elected officials and employees should not be

---

[6] In *Georgia Ports Authority,* the Georgia Ports Authority filed a motion to disqualify Harris's counsel, Thomas C. Bordeaux, Jr., a member of the Georgia House of Representatives, on the grounds of a conflict of interest. *See Ga. Ports Auth.* at 151.

[7] The Georgia Supreme Court observed how comparatively "draconian" the rule prohibiting legislators from taking on private clients to the majority of states. *Id.* Additionally, the court observed a reduction of lawyer-representatives in the legislature. *Id.* at 146-147.

denied the opportunity, available to all other citizens, to acquire and retain private economic and other interests, except where conflicts with the responsibility of such elected officials and employees to the public cannot be avoided.

*Id.* at 147 (quoting OGCA § 45-10-21(b)). As such, the Georgia court adopted an *ad hoc*[8] conflicts of interest standard in line with the majority of states. *Id.* at 148 (citing to *Thompson v. State,* supra, 254 Ga. at 396(2), 330 S.E.2d 348) (declining to impose per se rule of disqualification on part-time solicitors and requiring ad hoc analysis to determine whether actual conflict of interest existed to justify disqualification).

As the Georgia Supreme Court in *Georgia Ports Authority v. Harris* has since determined that the rule in *Georgia Department of Human Resources* expressed the position of a minority of jurisdictions and was overbroad, this Court rejects the OAG's plea to find *Georgia Department of Human Resources* persuasive.

**C.     Attorney Fisher's disqualification is not warranted in this matter.**

The Court now turns to the main issue of Attorney Fisher's disqualification. The question before the Court is one of first impression. Guam caselaw is silent as to whether a conflict of interest under Rule 1.7 of the Guam Rules of Professional Conduct exits when a sitting senator in the continues to represent clients, including criminal defendants, during their term.

The Court, therefore, turns again to *Barrett-Anderson* for guidance, although the facts of that case are distinguishable: *Barrett-Anderson* dealt with the issue of the proper disqualification of the OAG from a civil matter – in this case, the issue lies with Attorney Fisher's dual role as a lawmaker *and* as a criminal defense lawyer. Nonetheless, the Court first turns to the issue of the "appearance of impropriety" before addressing "significant risk."

---

[8] Meaning "when necessary or needed."

**a.** **The Court rejects a finding of the "appearance of impropriety" in light of the history of practicing attorneys also serving as a member of the Guam Legislature.**

Absent any applicable caselaw proffered by the OAG for the Court to consider, the Court looks to the history of this jurisdiction and past members of the Guam Legislature who were also active members of the Guam Bar Association during their public service. In particular, the Court looks to the past administration of Attorney General Douglas B. K. Moylan ("AG Moylan") from 2003 – 2007. During that term the following Guam senators were also attorneys as members of the Guam Bar Association:

1. F. Randall Cunliffe (active member of the Guam Bar since August 24, 1978; 27th Guam Legislature, 2003);
2. Robert W. Klitzkie (currently inactive; member since December 23, 1974; 27th & 28th Guam Legislature, 2003 & 2005);
3. Benjamin J.F. Cruz (active member of the Guam Bar since December 12, 1975; 28th Guam Legislature, 2005).[9]

This Court's survey of the record does not indicate any motions to disqualify a sitting Guam senator who is also an active member of the Guam Bar, let alone any disqualification of the members listed above. The Court finds no factual distinction between AG Moylan's past administration during 2003 – 2007 and this current administration. From 2003 – 2007, three sitting members of the Guam Legislature were still members of the Guam Bar Association and routinely appeared before the Superior Court for criminal and civil matters. On information and belief, Attorney Fisher is a current-sitting member of the Guam Legislature and an active member of the Guam Bar.[10] Additionally, Attorney Fisher has numerous cases before this Court, all criminal cases, without any pending motion for his disqualification other than the one at bar.

---

[9] Information cross-referenced from www.guamlegislature.com & www.guambar.org.
[10] The Court takes judicial notice of the official results of the 2024 election, wherein Attorney Fisher was unsuccessful in his bid for reelection. See 2024 General Election Official Results Reports, Guam Election Commission (Nov. 21, 2024) at https://gec.guam.gov/2024-general-election-official-results-reports/. However, at the time of this Decision

For these reasons, the Court does not find an "appearance of impropriety" exists in this case, considering Guam's history. The Court now turns to the issue of "significant risk."

**b.** **The OAG has failed to show that Attorney Fisher's role as a sitting senator of the Guam Legislature while representing a criminal defendant poses a significant risk of violating the rules of Professional Conduct.**

Pursuant to *Barrett-Anderson*, the Court must consider any showing "that the attorney's representation risks violating the Rules of Professional Conduct." *Barrett-Anderson* at ¶ 17. The OAG proffered P.L. 33-08[11] regarding the offense of Promoting Prison Contraband. *Ppl.s Mot.* at p. 3. The OAG further proffers Attorney Fisher's "privilege" of voting to appropriate public moneys for various agencies, as well as sitting on the Committee of Public Safety that introduced P.L. 33-08, and argue that Attorney Fisher's heightened responsibilities as a sitting senator is at odds with his requirement to zealously advocate for his clients. *Ppl.'s Mot.* at pp. 3-6, 9.

The Court is not persuaded by these arguments. P.L. 33-08 was signed into law in 2015, seven (7) years before Attorney Fisher was elected – thus, Attorney Fisher had no part in the enactment of that law. The OAG has failed to show what, if any, law upon which Attorney Fisher has participated in that has affected his interests with his clients.

Further, the OAG fails to articulate effect disqualifying Attorney Fisher's would have on mitigating or eliminating any "significant risks." In this Court's April 2, 2024 Decision and Order disqualifying Special Assistant Attorney General Joseph McDonald ("SAAG McDonald"), the Court made the following inquiry:

> [SAAG McDonald] will work closely with an OAG Investigator, with police officer witnesses, with victim witnesses all in service to the public interest. Will he be able to impeach the same police officer or investigator witnesses in the cases involving

___

and Order's issuance, Attorney Fisher is still serving as a Guam senator and an active member of the Guam Bar Association.

[11] The People miscite the Public Law, erroneously indicating "P.L. 33-008."

his clients? Are the same Chief and Deputy Chief Prosecutors going to evaluate the pleas involved in the McDonald's criminal defendant client's cases?

*Dec. and Order Re. Defendant's Mot. to Disqualify a Prosecutor* (Apr. 2, 2024) at p. 16. In that decision, the Court was concerned with the conflict of interests between SAAG McDonald's representation of current clients and his role as prosecutor. This instant case is distinguishable from SAAG McDonald's role as prosecutor against criminal defendants while also serving as criminal defense counsel. Attorney Fisher's role as a lawmaker does not present a significant risk of violating the Professional Rules. There has not been showing that he works closely, in his capacity as a lawmaker, with prosecutors, investigators, and police officers in criminal cases. As such, the Court finds that the OAG has not satisfied its burden of showing "significant risk" of a violation of Rule 1.7 of the Guam Rules of Professional Conduct as set forth in *Barrett-Anderson*.

## CONCLUSION

For the reasons set forth herein, the Court hereby **DENIES** the OAG's Motion to Disqualify Defense Counsel.

As Defendant has continued to **ASSERT** her right to a speedy trial, the Court must take the matter to trial within **14 days**, which is the remainder of the 60 days mandated for this Court to take the matter to trial pursuant to 8 GCA § 80.60(a)(3). An [Asserted] Criminal Trial Scheduling Order shall be issued concurrently with this Decision and Order scheduling trial within no less than **five (5)** days of the date of this Decision and Order, pursuant to 8 GCA § 80.40 ("The defendant is entitled to at least five (5) days after entering his plea to prepare for trial ….").

**SO ORDERED** this 25th day of November, 2024.

**SERVICE VIA EMAIL**
I acknowledge that an electronic copy of the original was e-mailed to:

___Abr T·Fisher___

Date:__11-25-24__ Time:__2:56pm__

__Antonio Cruz__
Deputy Clerk, Superior Court of Guam

**HONORABLE MARIA T. CENZON**
Judge, Superior Court of Guam